UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JARNAIL SINGH, *et al.*,

Plaintiffs,

v.

EMILIA BARDINI, *et al.*,

Defendants.
_____/

No. C-09-3382 EMC

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**

**(Docket No. 18)**

Plaintiffs Jarnail Singh, Sudesh Kumari Singh, Hardip Zhim Singh, and Shashi Kiran Kaur (collectively, the "Singhs") have filed suit against the federal government, contesting the decision of the United States Citizenship and Immigration Services ("USCIS") to terminate their asylum status. The Singhs do not seek any money damages from the government but rather ask only for declaratory and injunctive relief. Currently pending before the Court is the government's motion to dismiss both for lack of subject matter jurisdiction and for failure to state a claim for relief. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **DENIES** the government's motion to dismiss.

## I. FACTUAL & PROCEDURAL BACKGROUND

In their complaint, the Singhs allege as follows.

Mr. Singh is a citizen of India who was granted asylum in the United States on September 18, 1996. *See* Compl. ¶ 4 & Ex. A (letter, dated 9/23/1996, from INS to Mr. Singh, granting request for asylum as of 9/18/1996).

Shortly after he was granted asylum, Mr. Singh petitioned the federal government to accord his wife and his two children derivative asylum. That petition was granted on December 11, 1996. *See* Compl. ¶ 5 & Ex. B (approved asylee relative petition).

Almost ten years later, on June 27, 2006, the USCIS sent to Mr. Sign a Notice of Intent to Terminate Asylum Status ("NOIT"), informing him that his asylum status could be terminated pursuant to 8 C.F.R. § 208.24(a)(1).[1] *See* Compl. ¶ 6. The NOIT states in relevant part:

> USCIS has obtained evidence that indicates fraud in your application for asylum such that you were not eligible for asylum at the time it was granted. According to evidence from individuals who prepared your asylum application, you willfully and knowingly submitted an I-589 (Application for Asylum and Withholding of Removal) containing false information regarding your claim of persecution. In 2000, these individuals were convicted in Federal District Court for the following: conspiracy to defraud the United States, in violation of 18 U.S.C. Sec. 371; and making false statements to an agency of the United States, in violation of 18 U.S.C. Sec. 1001. Evidence included in their trial indicates that these individuals prepared a fraudulent asylum application on your behalf in order for you to qualify for asylum."

Compl., Ex. C (NOIT). In the NOIT, USCIS also noted that a termination interview would be held on August 2, 2006, at which time Mr. Singh would have "the opportunity to respond to [the] adverse information." Compl., Ex. C.

On June 30, 2006, counsel for Mr. Singh sent a letter to USCIS, noting that, under 8 C.F.R. § 208.24(c), Mr. Singh had the right to present evidence to show that he was eligible for asylum[2] but that the NOIT sent by the government failed to give Mr. Singh sufficient notice such that he could present evidence in support of his case.

> [The notice] does not provide details regarding the "evidence." No documents or court records are included with the notice of intent to

---

[1] Title 8 C.F.R. § 208.24(a)(1) provides as follows: "Except as provided in paragraph (e) of this section, an asylum officer may terminate a grant of asylum made under the jurisdiction of an asylum officer or a district director if following an interview, the asylum officer determines that: (1) There is a showing of fraud in the alien's application such that he or she was not eligible for asylum at the time it was granted . . . ." 8 C.F.R. § 208.24(a)(1).

[2] Title 8 C.F.R. § 208.24(c) provides as follows: "Prior to the termination of a grant of asylum or withholding of deportation or removal, the alien shall be given notice of intent to terminate, with the reasons therefor, at least 30 days prior to the interview specified in paragraph (a) of this section before an asylum officer. The alien shall be provided the opportunity to present evidence showing that he or she is still eligible for asylum . . . ." 8 C.F.R. § 208.24(c).

> terminate. In order for my client to have a meaningful opportunity to
> present evidence of his asylum eligibility, my client needs to know
> what "evidence" the government intends to introduce at the interview.

Compl., Ex. D (letter, dated 6/30/2006, from Mr. Singh's counsel to USCIS). Counsel then stated that he was filing FOIA[3] applications to obtain copies of Mr. Singh's files and asked that the interview be deferred until after the FOIA applications had been processed. *See* Compl., Ex. D. Some documents were eventually produced while others were withheld or redacted. FOIA litigation remains pending on those documents that were withheld or redacted.

In 2009, Mr. Singh's request for a continuance of the interview was formally granted. *See* Compl., Ex. E (letter, dated 4/30/2009, from USCIS to Mr. Singh). The interview was rescheduled to June 30, 2009. *See* Compl., Ex. E.

According to the Singhs, at the June 2009 interview, Mr. Singh was not allowed to inspect the underlying evidence on which the government was relying to support the termination of asylum status. In fact, the government asylum officer even refused to describe the evidence with any additional specificity. *See* Compl. ¶¶ 9-11.

On June 12, 2009, the day after the interview, USCIS terminated Mr. Singh's asylum status as well as the status of his dependents (*i.e.*, his wife and children). *See* Compl. ¶ 13. The notice to Mr. Singh stated in relevant part as follows:

> The Federal District Court conviction of members of the firm
> that prepared your asylum application and other evidence specifying
> that your asylum application is false are material because they
> contradict your claim for asylum. Your explanation for the
> inconsistencies between your testimony and the above-referenced
> evidence was not reasonable because this contrary evidence is
> credible. This contrary evidence casts significant doubt on the
> reliability of your claims on your I-589 and testimony to the Asylum
> Office."

Compl., Ex. F (letter from INS to Mr. Singh).

On June 17, 2009, USCIS issued Notice to Appear forms to the Singhs, asserting that they were subject to removal because Mr. Singh's asylum status had been procured by fraud. *See* Compl., Ex. G (Notices to Appear).

---

[3] FOIA is an acronym for Freedom of Information Act.

1 The thrust of the Singhs' complaint against the federal government is that USCIS unlawfully terminated their asylum status by refusing to disclose to them the evidence of alleged fraud on which the government was relying. According to the Singhs, in refusing to disclose this evidence, the government violated their right to due process. The Singhs also assert that, in refusing to disclose the evidence, the government violated the Immigration and Nationality Act ("INA"), *see* 8 U.S.C. § 1158, and its implementing regulations, in particular, 8 C.F.R. §§ 208.24(c) and 103.2(b)(16). *See* 5 U.S.C. § 706(2) (providing that, under the Administrative Procedure Act, a reviewing court may hold unlawful and set aside agency action found to be, *e.g.*, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; short of statutory right; or without observance of procedure required by law).

## II. DISCUSSION

In the currently pending motion, the government presents two arguments. First, it asserts that this Court lacks subject matter jurisdiction over the instant case because the Singhs have failed to exhaust their administrative remedies (1) under FOIA and (2) under the INA. Second, the government contends that, even if there is subject matter jurisdiction, the due process claim should be dismissed for failure to state a claim.[4] Each argument is addressed below.

A. <u>Subject Matter Jurisdiction</u>

As noted above, the government argues that subject matter jurisdiction is lacking in the instant case because the Singhs did not exhaust their administrative remedies under FOIA and under the INA.

    1. <u>FOIA</u>

The government has submitted evidence that, in or about August 2005 – *i.e.*, prior to the issuance of the NOIT – Mr. Singh's former counsel submitted a FOIA request, asking for a copy of Mr. Singh's immigration file. *See* Eggleston Decl., Exs. A-C (FOIA request and responses). Some documents were produced in response, but others were withheld. *See* Eggleston Decl., Ex. C (FOIA response). Mr. Singh's attorney appealed the decision to withhold, *see* Eggleston Decl., Ex. D

---

[4] The Court notes that the government does not make a 12(b)(6) challenge to the Singhs' claim that they are entitled to relief because the USCIS violated the INA and its implementing regulations.

(appeal), but, in June 2008, the appeal was closed when USCIS learned that the attorney no longer had a license to practice law. *See* Eggleston Decl. ¶ 14.

The government has also submitted evidence that, after the issuance of the NOIT, Mr. Singh's current counsel made a second FOIA request for Mr. Singh's immigration file.[5] *See* Eggleston Decl., Exs. F-G (FOIA request and responses). In January 2008, USCIS produced some documents but withheld others, including some law enforcement records. *See* Eggleston Decl., Ex. G (FOIA response). In February 2008, Mr. Singh's attorney appealed the decision to withhold, noting that no information was provided about the alleged fraud with respect to Mr. Singh's application for asylum. "If, as the Asylum Office asserts, the 'individuals' [who prepared his application] were prosecuted, and the 'evidence' used in their prosecution, the documents identifying the individuals and the evidence used in their prosecution are public records." Eggleston Decl., Ex. H (appeal).

Although the appeal was still pending a year later (and is still pending today, *see* Eggleston Decl. ¶ 22), Mr. Singh's attorney sent a letter to USCIS in April 2009, stating that he had received a response to the FOIA request and asking for a new termination interview date. *See* Lehman Decl. ¶ 17. Accordingly, the USCIS set a new termination interview date for June 11, 2009. *See* Lehman Decl. ¶ 18.

In its motion to dismiss, the government argues in effect that Mr. Singh jumped the gun – *i.e.*, that he should have waited to get the results of his FOIA appeal before asking for the termination interview to go forward. The government is correct that FOIA contains an administrative exhaustion provision. *See* 5 U.S.C. § 522(a)(6)(C)(i) ("Any person making a request to any agency for records under paragraph (1), (2), or (3) of this subsection shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph."); *In re Steele*, 799 F.2d 461, 465 (9th Cir. 1986) ("Exhaustion of a parties' administrative remedies is required under the FOIA before that party can seek judicial review."); *United States v. United States District Court*, 717 F.2d 478, 480

---

[5] Mr. Singh's current counsel also made a third FOIA request after initiating this litigation. *See* Eggleston Decl. ¶ 23 (referring to a third request made on 9/24/2009).

1 (9th Cir. 1983) ("Upon exhaustion of administrative remedies, a person not satisfied with an
2 agency's response to a document request may institute civil suit in the United States district courts
3 for judicial review of an agency's determination that certain documents will not be released.").

4 However, that only means that Mr. Singh jumped the gun with respect to initiating a lawsuit
5 based on the denial of his FOIA request. As the Singhs argue, this is a separate issue from whether
6 or not USCIS had an independent duty under the INA and its implementing regulations to provide
7 him with evidence of the alleged fraud. In other words, the rights under the INA do not depend on
8 exhaustion of a FOIA request which is collateral to these proceedings. Accordingly, the Court
9 rejects the government's position that Mr. Singh should have exhausted his FOIA administrative
10 remedies.[6]

   2. <u>INA</u>

12 The government contends that, even if FOIA administrative exhaustion is not required in the
13 instant case, INA administrative exhaustion is, and there can be no exhaustion in the instant case
14 until the removal proceeding (initiated in June 2009 with the Notice to Appear forms) is completed.
15 In a related argument, the government argues that this Court lacks jurisdiction because, upon
16 initiation of a removal proceeding, jurisdiction vests with the immigration judge. *See* 8 U.S.C. §
17 1252(g) (providing that, "[e]xcept as provided in this section and notwithstanding any other
18 provision of law (statutory or nonstatutory), . . . no court shall have jurisdiction to hear any cause or
19 claim by or on behalf of any alien arising from the decision or action by the Attorney General to
20 commence proceedings, adjudicate cases, or execute removal orders against any alien under this
21 Act"); 8 C.F.R. § 1003.14(a)-(b) (providing that "[j]urisdiction vests, and proceedings before an
22 Immigration Judge commence, when a charging document is filed with the Immigration Court by the
23 Service" and that, "[w]hen an Immigration Judge has jurisdiction over an underlying proceeding,
24 sole jurisdiction over applications for asylum shall lie with the Immigration Judge"). Furthermore,
25 under 8 U.S.C. § 1252, "the court of appeals is the exclusive forum in which any questions of law or
26 fact 'arising from any action taken or proceeding brought to remove an alien from the United States'

---

[6] At the hearing, the government clarified that its primary point was that Mr. Singh's failure to exhaust his FOIA rights undermines his due process claims. That issue is addressed below.

may be adjudicated." *See Singh v. Cherthoff*, No. C05-1454 MHP, 2005 WL 2043044, at *2 (N.D. Cal. Aug. 24, 2005) (quoting § 1252(b)(9); also citing § 1252(a)(5)).

The Ninth Circuit has not addressed either of these related arguments. The critical question as it relates to both the exhaustion and jurisdiction arguments is whether the termination of status interview is a proceeding separate and independent of the removal proceeding. If they are so separate and independent, then exhaustion is completed when the termination of status proceedings is brought to a conclusion as it was in the instant case. Moreover, the termination of status proceedings, being independent, would not be subject to the exclusive jurisdiction committed to administrative law judges over removal proceedings. *See id.* at *3 (noting that the issue is whether "a decision to revoke an alien's asylum status is an "action taken or proceeding brought to remove an alien from the United States,'as is required to bring a challenge to that decision within the scope of section 1252(b)(9)'s jurisdictional bar").

Judges in this District have reached different conclusions on the question whether the two proceedings are independent. Judge Larson has issued an opinion favorable to the government, *see Singh v. U.S. Citizenship & Immigration*, No. C 06-7189 JL (N.D. Cal.) (Docket No. 53); Judges Patel and Wilken have issued opinions favorable to the Singhs. *See Singh*, 2005 WL 2043044; *Sidhu v. Bardini*, No. C 08-05350 CW, 2009 U.S. Dist. LEXIS 48808 (N.D. Cal. June 10, 2009).

The Court has considered these cases and, although it is a close question, is ultimately persuaded by the reasoning of Judge Patel. As Judge Patel explained in her decision, a termination-of-status proceeding and a removal proceeding are in fact separate and independent proceedings, and here the Singhs are challenging only the former proceeding and not the latter. That the two proceedings are separate and independent is supported by the way that the INA and its implementing regulations characterize the proceedings. *See Singh*, 2005 WL 2043044, at *3 (noting that "it is clear that [INA and its implementing regulations] characterize the initiation of removal proceedings as a separate action that [USCIS] must take if it wishes to remove an alien from the country after it revokes a grant of asylum"). For example, 8 C.F.R. § 208.24(e) provides that, "[w]hen an alien's asylum status . . . is terminated . . . , the Service shall initiate removal proceedings, *as appropriate*, if the alien is not already in exclusion, deportation, or removal proceedings." 8 C.F.R. § 208.24(e).

The use of the phrase "as appropriate" in § 208.24(e) "suggest[s] that there may be circumstances where an action to remove an alien does not follow necessarily from the termination of the alien's asylum status." *Singh*, 2005 WL 2043044, at *3. Moreover, it should be noted that termination of asylum status and removal are in fact addressed by different sets of regulations. *Compare* 8 C.F.R. § 208 *et seq.* (termination of asylum status), *with id.* § 239 *et seq.* (removal).

Accordingly, because a termination-of-status proceeding is separate and independent of a removal proceeding, and because the Singhs challenge only the former, not the latter, there is no jurisdictional bar to the Court's consideration of this case. The immigration judge has exclusive jurisdiction over the removal proceeding that has been initiated against the Singhs, but not the termination-of-status proceeding. As Judge Patel stated, "a decision to revoke an alien's asylum status is [not] an 'action taken or proceeding brought to remove an alien from the United States,' as is required to bring a challenge to that decision within the scope of section 1252(b)(9)'s jurisdictional bar." *Singh*, 2005 WL 2043044, at *3.

Like Judge Patel's opinion, Judge Wilken's opinion also indicates that a termination-of-status proceeding and a removal proceeding should be considered separate and independent proceedings. In addition, Judge Wilken's opinion expressly holds that a party challenging a decision terminating asylum status does not need to first exhaust a removal proceeding. In *Sidhu*, the plaintiff was issued a notice of intent to terminate asylum status. Subsequently, after a termination interview, the asylum status of the plaintiff, as well as the asylum status of her spouse and children, were terminated. The plaintiff also received a Notice of Appear form which placed her and her dependents under removal proceedings. The plaintiff renewed her asylum claim in the immigration court and then filed a lawsuit in federal court challenging the termination of her asylum status. *See Sidhu*, 2009 U.S. Dist. LEXIS 48808, at *1-2.

One of the issues before Judge Wilken was whether USCIS's decision to terminate the plaintiff's asylum status should be considered a final agency action, a prerequisite under the Administrative Procedures Act ("APA"). Judge Wilken concluded it was. "One factor weighing in favor of [this] finding is the fact that neither the INA nor its implementing regulations give [a plaintiff] a right to appeal USCIS's decision to terminate their asylum status." *Id.* at *4. "Another

United States District Court
For the Northern District of California

factor in favor of finding final agency action is the fact that the USCIS's decision had a direct and immediate effect on Plaintiffs' day-to-day life. As a result of having their asylum status terminated, Plaintiffs lost their legal right to live and work in the United States, as well as their right to travel in and out of the United States." *Id.* at *5.

Judge Wilken then noted that, in "determining whether an agency action is final, [it] must also consider whether Plaintiffs have exhausted their administrative remedies." *Id.* Notably, she rejected the government's contention that, because removal proceedings had been initiated, USCIS's decision to terminate asylum status was rendered nonfinal.

> Though it is true that Plaintiffs can and have renewed their asylum claims in the removal proceeding, pursuing those claims is a far cry from the remedy they seek. If Plaintiffs prevail in all aspects of their APA suit, the Court would recognize that they were previously granted asylum status, set aside their unlawful termination, and order the agency to furnish them with proof of their asylum status. The mere opportunity to submit to the discretion of the immigration court a renewed request for asylum status would not relieve the hardship caused by withholding court consideration of Plaintiffs' claims that they already have that status.

*Id.*

In the instant case, the parties agree that, upon termination of the Singhs' asylum status, they have not been able legally to work. Hence, as in *Sidhu*, the termination-of-status proceeding here -- in and of itself -- has legal and practical consequences; a material deprivation has occurred independent of any possibly impending removal proceeding.

The government argues still that its position is supported by analogous case law dealing with a denial of an application for adjustment of status to that of permanent resident. In particular, the government relies on *Howell v. INS*, 72 F.3d 288 (2d Cir. 1995). While the government's analogy to *Howell* is understandable, it is ultimately unpersuasive. A person who has been denied an adjustment to a new status is in a materially different position than a person who has had her existing status taken away. For the former, the denial does not work an immediate deprivation independent of a subsequent removal proceeding. In a deportation proceeding before an immigration judge, a person who has been denied an adjustment of status by USCIS is in the same exact position that she was before the denial – *i.e.*, she has never had the status of permanent

1  resident. In contrast, a person who has had her asylum status terminated by USCIS prior to the
2  removal hearing has suffered an immediate and independent deprivation. This was the basic point
3  underlying Judge Wilken's decision in *Sidhu*.

4      The Court therefore rejects the government's contention that administrative exhaustion
5  and/or subject matter jurisdiction is lacking in the instant case pursuant to the INA and its
6  implementing regulations.

7  B.    <u>Failure to State a Claim for Relief</u>

8      As noted above, the government makes a 12(b)(6) challenge to only one of the claims
9  asserted by the Singhs -- *i.e.*, the claim that their due process rights were violated because the
10 USCIS never disclosed to them the evidence of alleged fraud on which the government was relying.
11 The government contends that the Singhs have failed to state a claim for violation of due process
12 because their asylum status is not a protected interest, being provisional in nature and terminable at
13 the discretion of the government.

14     The government's argument is not particularly persuasive. Even if there is no constitutional
15 right to be granted asylum, *cf. Gadria v. Gantner*, No. 05 Civ. 6621 (NRB), 2008 U.S. Dist. LEXIS
16 19792, at *10 (S.D.N.Y. Mar. 6, 2008) (noting that "multiple circuits have held that there can be no
17 Fifth Amendment due process claim based on adjustment proceedings or other analogous
18 discretionary benefit hearings"), that does not necessarily mean that, once granted, asylum status can
19 be taken away without any due process protections. Notably, the case that the government cites in
20 support – Judge Patel's *Singh* opinion – does not conclude that there is no liberty or property interest
21 in one's existing asylum status. While Judge Patel did state in *Singh* that "the 'private interest' at
22 stake in terminating a grant of asylum carries markedly less weight than that which is at stake when
23 an alien is removed from the United States," she added that this "is not to say that due process
24 affords no protection to an alien who faces the revocation of his or her asylum status." *Id.* at *5-6;
25 *see also Singh v. Vasquez*, No. CV-08-1901-PHX-MHM, 2009 U.S. Dist. LEXIS 90301, at *14 (D.
26 Ariz. Sept. 30, 2009) (stating that an alien admitted into the United States under a grant of asylum is
27 "undoubtedly entitled to procedural due process under the Fifth Amendment"). Accordingly, the
28

courts that have addressed the issue have implicitly found there is a liberty or property interest at stake.

The government argues still that, even if there were a protected interest, as a matter of law, the Singhs are being given all the process that they are due because as part of the removal proceeding they will have the opportunity to reapply for asylum and establish eligibility for asylum status. In short, the post-deprivation remedy affords sufficient due process. Although Judge Patel's *Singh* opinion supports this argument, the Court cannot say at this juncture in the proceedings that, as a matter of law, the Singhs were given all the process that they were due under the facts of the instant as-applied challenge.[7]

Under *Mathews v. Eldridge*, 424 U.S. 319 (1976), the following factors must be considered in determining what process should be afforded:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335. Here, it is impossible for the Court to evaluate the second and third factors without having knowledge of what specific information was not disclosed by the government. For example, if the information withheld by the government was information already known by the Singhs or attainable through, *e.g.*, publicly available court records, then the probable value of a more specific disclosure would be small. In contrast, if the information withheld by the government was information of which the Singhs were not aware or not available to them, then the potential value of a more specific disclosure would be greater. Moreover, the probable value of the additional process sought here turns on the content of what was withheld compared to what was disclosed – *i.e.*, how important was the information sought to Mr. Singh's defense? Nor can the Court at this juncture say what kind of administrative burden would be imposed if a more specific disclosure were required. These determinations cannot be made in a motion to dismiss.

---

[7] At the hearing, counsel for Mr. Singh clarified this is an as-applied, not facial challenge.

11

Accordingly, the Court denies the government's 12(b)(6) motion to dismiss the Singhs' due process claim.

### III. CONCLUSION

For the foregoing reasons, the government's motion to dismiss for lack of subject matter jurisdiction and/or for failure to state a claim for relief is denied.

A case management conference in this case is hereby scheduled for February 24, 2010, at 1:30 p.m. A joint case management conference statement shall be filed by February 17, 2010.

This order disposes of Docket No. 18.

IT IS SO ORDERED.

Dated: January 19, 2010

_____
EDWARD M. CHEN
United States Magistrate Judge