United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JARNAIL SINGH, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>EMILIA BARDINI, *et al.*,<br><br>    Defendants.<br>_____/ | No. C-09-3382 EMC<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>**(Docket Nos. 37, 40)** |

    Plaintiffs Jarnail Singh, Sudesh Kumari Singh, Hardip Zhim Singh, and Shashi Kiran Kaur (collectively, the "Singhs") have filed suit against the federal government, contesting the decision of the United States Citizenship and Immigration Services ("USCIS") to terminate their asylum status. The Singhs do not seek any money damages from the government but rather ask only for declaratory and injunctive relief. Currently pending before the Court are the parties' cross-motions for summary judgment. There are two issues presented for the Court's resolution: (1) whether the actions of the USCIS were arbitrary or capricious, *i.e.*, a violation of the Administrative Procedures Act ("APA"), and (2) whether the actions of the USCIS violated the Singhs' due process rights.

    Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel and all other evidence of record, the Court hereby **GRANTS** the Singhs' motion for summary judgment and **DENIES** the government's.

## I. FACTUAL & PROCEDURAL BACKGROUND

    The evidence submitted by the parties reflects as follows.

    Jarnail Singh applied for asylum in or about July 15, 1996. *See* AR 329. Mr. Singh was assisted in the preparation of his application by an individual by the name of Rama K. Hiralal. *See*

*id.* In his application, Mr. Singh stated that he was seeking asylum in the United States because he "had been harassed, tortured and threatened by the Indian police" based on his political activities. *See id.* at 330.

On or about September 23, 1996, the then-INS granted Mr. Singh's request for asylum as of September 18, 1996. The INS stated: "It has been determined that you have established a well-founded fear of persecution upon return to your homeland." AR at 112. It appears that thereafter Mr. Singh petitioned for derivative asylum status for his wife and children and that such status was obtained. *See id.* (noting that derivative asylum status may be requested for a spouse or child).

In 1997, a criminal case was initiated against, *inter alia*, the individual who had assisted Mr. Singh in the preparation of his asylum application – *i.e.*, Mr. Hiralal. Mr. Hiralal was charged with various counts based on his alleged false statements to the government in preparing applications for asylum. Another individual, Raman Kesaven Nair, was also charged with substantially the same counts for the same conduct. *See* Pls.' RJN, Ex. B (indictment). The indictment did not include any charges against either Mr. Hiralal or Mr. Nair based on any work conducted with respect to Mr. Singh's application.

It appears that, at some point, Mr. Nair began to cooperate with the government in its case against Mr. Hiralal. Thus, in August 2000, Mr. Nair submitted a declaration in support of the prosecution against Mr. Hiralal. In his declaration, Mr. Nair stated that he had reviewed certain asylum petitions in the INS's files; that he was able to identify the false petitions on which he had worked; and that each of these false petitions contained "at least one significant false fact or story." AR 222 (Nair Decl. ¶ 3). Mr. Nair added: "Typically, these stories were invented by me based upon false asylum petitions previously created by me." *Id.* One of the allegedly false petitions listed in Mr. Nair's declaration was Mr. Singh's petition. *See* AR 223, 225 (Nair Decl. ¶ 4 & Att. A). The Nair declaration did not contain any specifics about what false fact(s) or story was contained in Mr. Singh's petition.

On June 27, 2006, the now-existing USCIS (successor to the INS) issued to Mr. Singh a notice of intent to terminate asylum status ("NOIT"). The notice stated as follows:

> This office has received the following information indicating that your asylum status could be terminated pursuant to 8 CFR 208.24(a)(1)[1]:
>
> • USCIS has obtained evidence that indicates fraud in your application for asylum such that you were not eligible for asylum at the time it was granted. According to evidence from individuals who prepared your asylum application, you willfully and knowingly submitted an I-589 (Application for Asylum and Withholding of Removal) containing false information regarding your claim of persecution. In 2000, these individuals were convicted in Federal District Court of the following: conspiracy to defraud the United States, in violation of 18 U.S.C. Sec. 371; and making false statements to an agency of the United States, in violation of 18 U.S.C. Sec. 1001. Evidence included in their trial indicates that these individuals prepared a fraudulent asylum application on your behalf in order for you to qualify for asylum.

AR 28. The NOIT did not explicitly identify the declaration of Mr. Nair as evidence in support, nor did it expressly identify Mr. Nair as a witness. In addition, the NOIT did not contain any specifics about what information in Mr. Singh's petition was allegedly false. The notice did, however, inform Mr. Singh that a termination interview had been scheduled and that he would "have the opportunity at the interview to present information and evidence to show that you are still eligible for asylum. Your asylum status will not be terminated unless a preponderance of the evidence supports termination." *Id.* at 29.

Subsequently, Mr. Singh asked the USCIS to delay the termination interview until after his request under the Freedom of Information Act ("FOIA") was processed. *See* AR 82. In the same letter, Mr. Singh asserted that he had not been given sufficient information about the evidence on

---

[1] Section 208.24(a)(1) provides:

> (a) Termination of asylum by the Service. Except as provided in paragraph (e) of this section, an asylum officer may terminate a grant of asylum made under the jurisdiction of an asylum officer or a district director if following an interview, the asylum officer determines that:
>
> (1) There is a showing of fraud in the alien's application such that he or she was not eligible for asylum at the time it was granted . . . .

8 C.F.R. § 208.24(a)(1).

which the USCIS was relying. Mr. Singh argued that this was a violation of two federal regulations, namely, 8 C.F.R. §§ 208.24(c) and 103.2(b)(16).

The USCIS granted Mr. Singh's request that the termination interview be rescheduled. *See id.* at 70. Ultimately, the interview was held on June 11, 2009. Notes taken by who a person who appears to have conducted the interview have been included in the administrative record. Those notes state in relevant part as follows:

> Anyone help you prepare your asylum application
> Yes, asked someone to write that application, rama hir lal
>
> Did rama hir lal work for any organization
> Don't know, someone took app to him
>
> Rama hir lal a relative of yours
> No
>
> Who introduced you to him
> Lahauri ram, he was development commissioner of California
>
> How did you come to know him
> He used to come to the gurudwara
>
> What did rama hir lal do to help you prepare your asylum application
> App doesn't know English, app was reciting and he was writing
>
> Did rama hir lal tell you to put anything in your asylum application that was not what happened to you
> What ever told him to write, app doesn't speak English
>
> Was your asylum application read back to you in your native language
> No, yes rama did
>
> Is asylum in asylum application truthful and correct
> What app was told him, and what ever he read back to app
>
> Did he read app of it back to you
> Yes
>
> Did you give true and correct information to the asylum officer during your asylum interview
>
> Do you still fear returning to your country
> Yes
>
> Why
> Same reasons as when applied for asylum
>
> Fear going back to your country for any other reason
> No

4

> Do you understand that the person who prepared your application was part of an organization that was convicted in court in this county [sic]
> Yes
>
> And that these people presented false information to the u.s. government about asylum application
> Maybe, but app knows that his own story is true
>
> We have information from the organization that prepared your specific application that your specific application was false, do you have any response to that
> What ever has happened with app, still remember that
>
> Was there any information in your asylum application that was false
> no

AR 181-82.

After the interview, the USCIS issued a notice of termination of asylum status, effective as of June 12, 2009. *See* AR 37. The notice stated:

> During [the termination] interview, you testified that your asylum application and the testimony that you gave to the Asylum Office during your asylum interview was true and correct, and that you had no knowledge of any false information included in your claim by those individuals assisting you in the preparation of your asylum application.
>
> The Federal District Court conviction of members of the firm that prepared your asylum application and other evidence specifying that your asylum application is false are material because they contradict your claim for asylum. Your explanation for the inconsistencies between your testimony and the above-referenced evidence was not reasonable because this contrary evidence is credible. This contrary evidence casts significant doubt on the reliability of your claims on your I-589 and testimony to the Asylum Office.
>
> USCIS has the burden of establishing that a preponderance of the evidence supports termination. A preponderance of the evidence establishes that there is a showing of fraud in your application such that you were not eligible for asylum at the time it was granted.
>
> Therefore, for the reasons stated in the Notice of Intent to Terminate Asylum Status, your Asylum Status is terminated.
>
> Termination of asylum status for a person who is the principal applicant results in the termination of the asylum status of a spouse and/or child whose status was derived from the principal's asylum approval.

*Id.*

## II. DISCUSSION

As noted above, two issues have been presented to the Court for resolution by summary judgment: (1) whether the actions of the USCIS were arbitrary or capricious, *i.e.*, a violation of the APA, *see* 5 U.S.C. § 706(2)(A) (providing that a court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"), and (2) whether the actions of the USCIS violated the Singhs' due process rights. For the reasons discussed below, the Court concludes that there was a violation of the APA and therefore does not address the due process issue.

A. APA Claim

The Singhs' basic contention is that the USCIS's actions were arbitrary and capricious because it issued a defective NOIT, *i.e.*, one that failed to comply with two regulations, 8 C.F.R. §§ 103.2(b)(16) and 208.24(c). According to the Singhs, the notice was deficient in that (1) it did not describe the evidence of alleged fraud, (2) it did not identify the individuals who alleged fraud, and (3) it did not specify what information in Mr. Singh's asylum application was false. *See* Mot. at 6.

Section 103.2(b)(16) imposes a degree of specificity with respect to the government's basis for denying asylum. Section 103.2(b)(16) requires that "[a]n applicant or petitioner shall be permitted to inspect the record of proceeding which constitutes the basis for the decision" (with certain exceptions, *e.g.*, for classified information). 8 C.F.R. § 103.2(b)(16). Section 103.2(b)(16) also provides that, "[i]f the decision will be adverse to the applicant or petitioner and is based on derogatory information considered by the Service and of which the applicant or petitioner is unaware, he/she shall be advised of this fact and offered an opportunity to rebut the information and present information in his/her own behalf before the decision is rendered." *Id.* § 103.2(b)(16)(i). However, the Court agrees § 103.2(b)(16) technically is not applicable to the instant case which concerns the termination of asylum previously granted. When § 103.2, of which subsection (b)(16) is a part, is considered in its entirety, it is evident that the regulation is applicable to asylum

1 applications but not to terminations of grants of asylum. For instance, § 103.2(b)(8) refers to
2 issuance of a notice of intent to deny rather than a notice of intent to terminate.[2]
3 That being said, for the reasons stated below, § 103.2(b)(16) may be helpful in determining
4 the requirement imposed by § 208.24(c), which the parties agree does apply to termination of
5 asylum. Section 208.24(c) provides that,

> [p]rior to the termination of a grant of asylum . . . , the alien shall be given notice of intent to terminate, *with the reasons therefor*, at least 30 days prior to the interview specified in paragraph (a) of this section before an asylum officer. The alien shall be provided the opportunity to present evidence showing that he or she is still eligible for asylum . . . .

8 C.F.R. § 208.24(c) (emphasis added). The government contends its NOIT sufficiently stated the reasons for termination; the Singhs contend it did not. The critical question in the instant case is how specific the USCIS must be in stating the reasons for the intent to terminate in an NOIT.

On this issue, the Affirmative Asylum Procedures Manual (Nov. 2007), *available at* www.uscis.gov/files/nativedocuments/AffrmAsyManFNL.pdf (last visited 5/26/2010), provides some guidance. The Manual provides: "Before asylum may be terminated, the Asylum Office issues to the asylee a Notice of Intent to Terminate (NOIT) listing the ground(s) for the intended termination and containing a *summary of the evidence* supporting the ground(s)." Manual at 143 (emphasis added). The Manual also explains that "the NOIT notifies the asylee of the grounds for termination, and includes a summary of the unclassified supporting evidence that constitutes grounds for termination." *Id.* at 146. If the evidence is not classified, then as a general matter it may be disclosed. *See id.* (noting that, "[g]enerally, the Asylum Office may disclose to the asylee unclassified evidence constituting or supporting grounds for termination, including unclassified materials from the Department of State or other government agencies"). Where classified information is involved, however, there is no disclosure of any "details . . . in order to protect the security of the classified operation or the safety of a confidential informant." *Id.* at 148. But there

---

[2] At the hearing, the Singhs argued that the government had conceded the applicability of § 103.2(b)(16) in its answer. *See* Docket No. 10 (Ans. ¶ 16). But, as the government noted in response, it thereafter filed an amended answer which did not include any such concession. *See* Docket No. 28 (amended answer).

may be some "appropriate disclosure of information, as needed, . . . to balance security concerns with the need to provide an asylee with *a meaningful opportunity to rebut*." *Id.* (emphasis added). The Manual thus suggests that, at its core, even where classified information is involved, the level of specificity required in a NOIT must be specific enough to give the asylee a meaningful opportunity to rebut. *Cf. Ogbolumani v. Napolitano*, 557 F.3d 729, 735 (7th Cir. 2009) (in § 103.2(b)(16) case, rejecting plaintiffs' contention that regulation requires USCIS "to provide, in painstaking detail, the evidence of fraud it finds"; noting that "[n]ot all the witnesses were identified by name, but the important ones were"). The Manual evidences the USCIS's interpretation of its regulation – § 208.24(c) – and is entitled to consideration. *Cf. Lin v. United States DOJ*, 459 F.3d 255, 264 (2d Cir. 2006) (rejecting BIA's interpretation of immigration regulation because it was inconsistent with government's prior interpretations of regulation found in, *e.g.*, Asylum Manual).

Moreover, this construction of § 208.24(c) is consistent with the level of specificity required of the USCIS under § 103.2(b)(16) described above. *Cf. Ghafoori v. Napolitano*, No. C09-5484 TEH, 2010 U.S. Dist. LEXIS 43605 (N.D. Cal. May 4, 2010) (concluding that violation of § 103.2(b)(16) was prejudicial because it deprived the plaintiff of the ability to make a meaningful rebuttal). To construe § 208.24(c) as requiring less specificity in terminating asylum already granted (and upon which reliance interest (such as derivative asylum for family) is likely to have vested) than under § 103.2(b)(16) in denying an initial application for asylum would make little sense.

Furthermore, to the extent the NOIT must under § 208.24(c) provide enough information to afford a meaningful opportunity to rebut the asserted basis for termination would appear to parallel the rudimentary due process principle that one must be afforded a meaningful "opportunity to be heard" before one is deprived of liberty or property. *Cf. Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) (stating that "[t]he fundamental requisite of due process of law is the opportunity to be heard'"); *Foss v. National Marine Fisheries Serv.*, 161 F.3d 584, 590 (9th Cir. 1998) (stating that "[t]he essence of due process is the requirement that a person in jeopardy of serious loss (be given) notice of the case against him and an opportunity to meet it. . . . All that is necessary is that the procedures be tailored . . . to insure that [claimants] are given a meaningful opportunity to present their case'"). While the Court does not rule on the due process claim advanced by the Singhs, it

notes that the Manual's implementation of § 208.24(c) appears to be structured so as to safeguard an important aspect of due process.

In the instant case, the Court concludes that the NOIT issued to Mr. Singh was lacking in the specificity needed to give Mr. Singh a meaningful opportunity to rebut required by § 208.24(c). The notice simply stated that

> USCIS has obtained evidence that indicates fraud in your application for asylum such that you were not eligible for asylum at the time it was granted. According to evidence from individuals who prepared your asylum application, you willfully and knowingly submitted an I-589 (Application for Asylum and Withholding of Removal) containing false information regarding your claim of persecution. In 2000, these individuals were convicted in Federal District Court of the following: conspiracy to defraud the United States, in violation of 18 U.S.C. Sec. 371; and making false statements to an agency of the United States, in violation of 18 U.S.C. Sec. 1001. Evidence included in their trial indicates that these individuals prepared a fraudulent asylum application on your behalf in order for you to qualify for asylum.

AR 28. The notice was deficient in that it did not identify the Nair declaration as the evidence of alleged fraud or otherwise even specify that Mr. Nair was the individual who provided the pivotal evidence of the alleged fraud. Had this information been disclosed to Mr. Singh, then he might have at the time of his interview offered more specific rebuttal evidence, *e.g.*, that Mr. Singh had never met Mr. Nair or that Mr. Nair played no role in filling out the asylum application. Mr. Singh might also have sought to have the USCIS subpoena Mr. Nair given the pivotal nature of his allegation. *See* 8 C.F.R. § 287.4 (discussing subpoena powers of agency).

More importantly, the NOIT was deficient in that there was no way to discern from its contents *what* information in the asylum application was allegedly false.[3] Even the Nair declaration provides no specificity whatsoever as to which statements were false. Mr. Singh's original request for asylum was detailed and contained numerous facts about events that occurred in India shortly before he fled to the United States. *See* AR 330-31 (discussing four different incidents that took

---

[3] The failure of the government to provide more specific information is problematic, particularly because it does not appear that any classified information was at issue. *See* Manual at 146 (noting that, "[g]enerally, the Asylum Office may disclose to the asylee unclassified evidence constituting or supporting grounds for termination, including unclassified materials from the Department of State or other government agencies").

9

place in 1995). The conclusory declarations of Mr. Nair provides no clue as to which of the numerous facts alleged in the asylum request were fraudulent.

In this respect, the instant case is analogous to *Sidhu v. Bardini*, C 08-05350 CW, 2009 U.S. Dist. LEXIS 48808 (N.D. Cal. June 10, 2009). There, Judge Wilken concluded that, as pled in the plaintiffs' complaint, there was a violation of § 208.24(c) precisely because such information was missing from the NOIT.

> The notice stated that Ms. Sidhu was granted asylum based on her claim that she was arrested together with her husband and subsequently harmed by the Indian authorities because of her and her husband's political activity. The notice vaguely explained that a recently filed form (I-730 Refugee/Asylee Relative Petition) on behalf of [the husband] Harjit Sidhu "calls into question the veracity of the testimony you provided about what happened to you and your husband in India." However the notice does not explain in any more detail *how* that form calls into question the veracity of Ms. Sidhu's testimony. There is no way to discern from this letter what aspect of her husband's I-730 conflicted with her previous testimony. The asylum office was required to issue a notice which lists the "ground(s) for the intended termination and [] a summary of the evidence supporting the ground(s)." Ms. Sidhu's notice contains neither.

*Id.* at *15-16 (emphasis added).

The government argues that Mr. Singh could not have been denied a meaningful opportunity to rebut because (1) the Nair declaration was a publicly available document that Mr. Singh should have been able to find given the content of the NOIT and (2) even if it had disclosed Mr. Nair's declaration, the disclosure would have made no difference. *See* 5 U.S.C. § 706 (providing that "due account shall be taken of the rule of prejudicial error"). The Court does not agree. First, the fact that an asylee faced with a NOIT might be able to access and parse an extensive court record to find key evidence does not excuse the requirement of § 208.24(c) that the NOIT contain specific reasons. Certainly, the government has provided no legal authority for its position. Second, even assuming that the Singhs should have been able to track down the Nair declaration, as explained above, the Nair declaration itself is conclusory and completely lacking in specifics as to what information in Mr. Singh's asylum application was false. *See* AR 22 (Nair Decl. ¶ 3) (stating that the false petitions contained "at least one significant false fact or story" and that, "[t]ypically, these stories were invented by me based upon false asylum petitions previously created by me"). Thus, the

10

Singhs were deprived of a meaningful opportunity to rebut and were thereby prejudiced. *Cf. Ghafoori v. Napolitano*, *supra*, 2010 U.S. Dist. LEXIS 43605 (denial of ability to make meaningful rebuttal under § 103.2(b)(16) constitutes prejudice).

As a final argument, the government asserts that *Hassan v. Chertoff*, 593 F.3d 785 (9th Cir. 2010), demonstrates that the information provided in the NOIT was sufficient for purposes of § 208.24(c). The Court agrees with the Singhs that *Hassan* involves materially distinguishable facts. In *Hassan*, which involved a due process challenge predicated on a violation of § 103.2(b)(16), there was no dispute that the plaintiff "was aware of the information against him" – *i.e.*, his alleged involvement in a terrorist organization. *Id.* at 789. "He was questioned about his involvement in the terrorist organization. He was given the opportunity to explain his association during the course of that questioning." *Id.* Accordingly, his due process rights were not violated. The instant case is distinguishable precisely because Mr. Singh was not aware of the information against him. Unlike *Hassan*, Mr. Singh was not given a meaningful opportunity to rebut because no specifics falsehoods nor the source of the allegation of fraud were identified in the NOIT.

Accordingly, the Court concludes that the USCIS acted arbitrarily and capriciously in failing to provide sufficient information in the NOIT to fulfill its obligation under § 208.24(c).

B.  <u>Due Process</u>

Because the Court has determined that there was a violation of the APA, it need not address the Singhs' due process claim. *See Jean v. Nelson*, 472 U.S. 846, 854 (1985) (noting that courts should avoid reaching constitutional issues when statutory determinations are decisive); *Doe v. Stephens*, 851 F.2d 1457, 1466 n.8 (D.C. Cir. 1988) (considering the plaintiff's APA claim first "because doing so in this case allows us to stop short of resolving [the] fourth amendment and right of privacy claims, thereby furthering 'an[] even more important principle of judicial restraint': the principle of avoiding constitutional questions if at all possible"); *American Historical Ass'n v. Nat'l Archives & Records Admin.*, 516 F. Supp. 2d 90, 108 (D.D.C. 2007) (stating that "the Court need not decide this case on purely constitutional grounds, as the Court shall assess in the first and final instance whether the Archivist's reliance on the Bush Order violates the APA rather than whether the Bush Order should be rejected en toto as unconstitutional").

### III. CONCLUSION

For the foregoing reasons, the Singhs' motion for summary judgment is granted and the government's cross-motion is denied. Because the Court has determined that the NOIT was insufficient for purposes of § 208.24(c), the NOIT is rendered ineffective and the aslyee status of the Singhs is therefore reinstated. This ruling, however, does not preclude the government from conducting additional immigration proceedings with respect to the Singhs (*e.g.*, issuing a new NOIT, continuing with the already-existing removal proceedings). Nor does this ruling bar the government from discontinuing any immigration proceeds against the Singhs.

This order disposes of Docket Nos. 37 and 40.

IT IS SO ORDERED.

Dated: June 7, 2010

_____
EDWARD M. CHEN
United States Magistrate Judge